No. 6786.

33  485
47 1235

J. H. MASSIE, E. E. CHUBBUCK, SUBROGEE, VS. J. M. BAILY & CO. AND
T. R. BRADY.

The issue in this case was, whether one of the Defendants had signed the written obligation sued upon, as agent of the other Defendants, or as their surety. The Court held that, under the evidence and the facts and circumstances of the case, it was satisfied said Defendant bound himself as surety; but that the failure to execute the contract, not having been caused by his fraud or bad faith, he was liable only for the amount of actual damages suffered by the Plaintiff.

APPEAL from the Fifth District Court for the parish of Orleans.
Cullom, J.

J. E. Wallace and W. B. Hyman for Plaintiff and Appellee.

Bentinck Egan and Cotton & Levy for Defendant and Appellant.

The opinion of the Court was delivered by

TODD, J.   Plaintiff claims three thousand four hundred dollars, with legal interest from July 25th, 1871, and costs.

This claim is based on the following agreement:

"NEW ORLEANS, March 25th, 1871.

"We hereby agree to deliver to J. H. Young, agent of J. H. Massie, sixty thousand feet of oak flitch, assorted thickness, 2, 2½, 3, 3½ and 4 inch, and thirty thousand feet of square-edged oak plank 2, 2½ and 3 inch thick.   One-third or more of this lot of lumber to be delivered at the City of New Orleans from the first load brought down by the Barge C. A. Loud (now here).

"All of the above lumber to be delivered at the City of New Orleans within four months from date written above.

"Said lumber to be received in full payment for the Steamboat Lida Norvel.

(Signed)                    J. M. BAILY & CO.

"I hereby agree to deliver the above lumber.

(Signed)                    T. R. BRADY.

Witness: H. H. ROMAINE."

An inspection of this instrument, as it appears in the record, shows after Brady's signature the letters "Ag't," and the same erased or obliterated by lines drawn across them thus: "Ag't" and the main controversy in the case grows out of this abbreviated word agent—the plaintiff contending that Brady bound himself personally, and Brady that he signed as agent.   The one further affirms that the instrument, when first delivered, did not contain this word, and Brady that it did, and the word " ag't" without the obliteration.

Brady first excepted to the action on the ground that in a previous suit upon the same instrument, he had been treated as an agent of J. M. Baily & Co., his co-defendants in this case, and that under such

judicial admission, the plaintiff was estopped from pursuing him personally.

This exception was referred to and tried with the merits. Brady subsequently filed an answer of general denial. From a judgment in favor of the plaintiff for the full amount claimed, he (Brady) has alone appealed.

There are several hundred pages of testimony in the record upon this question touching the *capacity* in which Brady signed the instrument, whether personally or as agent. Numbers of witnesses for plaintiff swear that the document, when first written and delivered, contained simply the signature of Brady, without the word agent or letters denoting it, while quite as large a number, including Brady himself, swear that this word was written and accompanied the signature, and was erased or obliterated subsequently to its delivery to plaintiff.

We at first turned with relief from this mass of testimony, reeking with charges of forgery and false swearing, to the following agreement of counsel:

"By consent of parties hereto * * * the question of forgery or no forgery is hereby waived, and this case is submitted to the Court for its decree against or in favor of T. R. Brady, upon the evidence in writing now on file and the pleadings and the law."

We imagined, inasmuch as nearly all the testimony was on this very question of "forgery or no forgery," that our labors would be greatly abridged. What was our disappointment when we turned to the briefs of counsel and read the widely different constructions placed upon this agreement, constructions so much at variance, at the same time so ingenious, that instead of affording the relief expected, we found we had but an additional labor on our hands to interpret this enigmatical agreement.

The counsel for plaintiff congratulate themselves and the Court that by the effect of this agreement the whole matter at issue is narrowed down to a simple inspection of the instrument as seen in the record; that is, with the signature of Brady to an unconditional promise, with the letters "ag't" obliterated or scratched out, showing conclusively, in their views, that Brady bound himself personally, and thus putting, as they contend, the question of his liability beyond controversy.

On the other hand, the defendants' counsel are even more congratulatory over this agreement, and point to it exultingly as an absolute abandonment of the charge that there was an alteration of the instrument after it was first signed, and as an admission that it was signed by Brady as agent, and that the word agent was originally in the instrument when delivered, and thus construing, of course, draw the conclusion, that signing as agent, Brady could not be personally bound.

To escape this legal puzzle, thrust so unexpectedly upon us, or rather to assist us in solving it, there was no other alternative than to return to the testimony itself upon this vital point, and however voluminous and contradictory it might be, by a patient study and investigation of it seek to find the truth. We have made this investigation, and carefully and deliberately weighed the conflicting evidence, and the conclusion we have reached is, that the defendant, Brady, signed that instrument, without any qualification, binding and intending to bind himself personally and as surety for Baily & Co. for the delivery of the lumber stipulated in the contract. Believing this, we cannot construe the agreement referred to as a consent or acknowledgment on the part of plaintiff's counsel, that Brady signed the contract in question simply as agent.

Not only the weight of the direct evidence supports our conclusion in regard to Brady binding himself personally, but the facts and circumstances existing at the time the contract was made, and which are undisputed, make any other view of the matter unreasonable and even extravagant.

It is shown that previously to the execution of this contract plaintiff had sold and delivered the steamboat mentioned in the instrument to J. M. Baily & Co., the price of which was still unpaid. Baily & Co. were non-residents, and were on the eve of leaving the State for their home, and to secure what was owing him, plaintiff was about taking out an attachment and seizing the barge C. A. Loud belonging to them.

They desisted from taking such measures, solely in consideration of Brady's signing the obligation for the delivery of the lumber, to be received in payment of the debt.

It is not to be supposed that plaintiff would have accepted the obligation signed by him as agent for Baily & Co., that offered no security for the debt, and besides, he had Baily & Co. personally bound, they having already signed the instrument through a member of their firm then present—and there could be no object in getting Brady to sign as their agent under such circumstances. It could add nothing to the contract, or in any way tend to secure the obligation created thereby. But the obligation was given, and after it received the signature of Brady and was delivered, Baily & Co. were allowed to depart and take their barge with them.

It is, however, urged that in a previous suit against Baily & Co., in this same contract, plaintiff had Baily & Co. cited through Brady as their agent, and in his petition styled Brady their agent, and that he was bound by these admissions, and could not in a subsequent suit treat him in a different or personal capacity. We have examined the proceeding, which is in the record, and it does not impart any such

meaning or consequence. Brady was undoubtedly the agent and factor of Baily & Co., who were large lumber dealers. Their business which previously had been conducted with the plaintiff, had been turned over to Brady, who thereafter was to receive their consignments, and dispose of the same. When we construe the allegations of the petition and proceedings in the case referred to, with reference to the relations thus established between the parties, they fail to possess any significance whatever touching the *special matter* involved in the present suit.

On the merits, it is not denied that there was a complete failure on the part of the defendants, Baily & Co., and Brady, to comply with the contract or to fulfill any of its stipulations.

Baily & Co. obligated themselves to deliver certain lumber designated and described in the instrument, and Brady, though binding himself in the same terms, became, as we have shown, their security. There was a complete failure to make the delivery. What liability did Brady incur by this failure?

The plaintiff claims $2,400, the alleged value of the lumber, and $1,000 damages, "actual, exemplary and vindictive, and for attorney's fees."

The court *a qua* gave judgment for the full amount of the claim. The value of 60,000 feet of lumber was claimed, estimated at $40 per thousand.

There is considerable conflict in the testimony touching the value of the lumber at the time it should have been delivered. A number of witnesses estimate it at less than $40 per thousand, and some as low as from $25 to $30. We are inclined to think that $35 per thousand would be a just and fair allowance for it, after a careful examination of the testimony on this point. This would make the total value $2,100.

To the extent, too, of the damages allowed, we think there was error in the judgment.

The failure to deliver the lumber stipulated in the contract, was not caused by any fraud or bad faith on the part of Brady, and his liability must be tested by Art. 1934, R. C. C., a fair construction of which would exempt him from the damages claimed, and make him liable only for the actual value of the lumber with interest on the same from the date of his default.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by reducing the same therein allowed to twenty-one hundred dollars with legal interest from the 25th July, 1871, and as thus amended, it be affirmed, the defendant, T. R. Brady, to pay the costs of the lower court and the plaintiff the costs of this appeal.

Rehearing refused.